Lenk, J.
(concurring in part and dissenting in part, with whom Botsford and Duffly, JJ., join). I agree with the court’s reasoning and conclusions on virtually all of the issues presented in this case. My only disagreement concerns the claim of the defendant, Christopher Bratlie, that three of his convictions were duplica-tive.
I accept the court’s rendering of the applicable principles.[1] I agree with the court that, under these principles, Bratlie’s two *705 convictions of assault and battery are potentially duplicative, essentially because “[o]n the basis of the instructions given, it is impossible for us to know on which facts each conviction rested.” Ante at 702. I do not, however, share the court’s view that there is no significant possibility that Bratlie’s remaining conviction of assault and battery is duplicative of his conviction of assault and battery for the purpose of intimidation.
The court’s line of reasoning on this point, as I understand it, [2] runs as follows: (a) one of the two convictions was surely based on acts by Bratlie that caused the victim bodily injury, “where the evidence was clear that Bratlie kicked and punched [the victim] when he was curled up in a fetal position and [the victim] suffered bodily injury,” ante at 704; (b) only the assault and battery conviction could have been based on an act by Bratlie that resulted in bodily injury, since the conviction of assault and battery for the purpose of intimidation was returned as a lesser included offense of assault and battery for the purpose of intimidation with the additional element of resultant bodily injury; and (c) correspondingly, the conviction of assault and battery for the purpose of intimidation must have been based on earlier acts by Bratlie, *706 namely his participation in the group that chased the victim out of the Careswell Street driveway, threatening him and calling him a “nigger.” In my view, this line of reasoning is not compelling.
To begin with, we cannot safely assume that the jury found that Bratlie was responsible for any injuries suffered by the victim. To be sure, the evidence would have supported such a finding; but we do not know what portions of this evidence the jury believed and what inferences they drew from it. For instance, the jury did not find that Kevin Shdeed, one of Bratlie’s codefendants, caused the victim bodily injury. There was testimony that Shdeed, like Bratlie, kicked and punched the victim while he was lying on the ground. See ante at 685. Shdeed also reportedly hit the victim with a large stick. See ante at 685. But, although Shdeed was charged with violations of civil rights resulting in bodily injury, and with assault and battery for the purpose of intimidation resulting in bodily injury (among other offenses), the jury convicted him only of the lesser included versions of these offenses that did not contain the element of resultant bodily injury.
The jury similarly could have entertained a reasonable doubt whether Bratlie’s acts caused the injuries suffered by the victim. If we do not assume that the jury found that Bratlie caused the victim bodily injury, we cannot proceed to identify, as the court seeks to do, which of Bratlie’s acts supported which of his convictions; any of those convictions could have been based on any of the acts with which Bratlie was charged.
Moreover, the court’s inference that Bratlie’s conviction of assault and battery for the purpose of intimidation was based on his noninjury-causing acts, early on in the confrontation, does not square with the court’s own analysis elsewhere in the opinion. One of Bratlie’s other arguments is that the evidence was insufficient to support his conviction of assault and battery for the purpose of intimidation. See ante at 694. In rejecting that argument, the court relies specifically on evidence concerning Bratlie’s involvement in the final, most violent phase of the attack against the victim. This evidence included the testimony of one witness, Christina Sacco, that Bratlie kicked and punched the victim while he was lying in the street; and that of another witness, Korrie Molloy, that all of the individuals in the group attacking the victim at that time were calling him a “nigger.” See *707 ante at 695-696.[3] The court’s own analysis thus suggests a significant possibility that Bratlie’s conviction of assault and battery for the purpose of intimidation was based on the very same acts that, in the current context, the court identifies as the likely basis of the assault and battery conviction.
For these reasons, my view is that here, too, “it is impossible for us to know on which facts each conviction rested.” Ante at 702. Given that the jury were not instructed that convictions of cognate offenses must be based on separate acts, there is a significant possibility that Bratlie’s conviction of assault and battery and his conviction of assault and battery for the purpose of intimidation were based on the same act. I would therefore reverse Bratlie’s remaining conviction of assault and battery as well.

As the court explains, convictions of “cognate” offenses, namely a greater offense and a lesser included offense, are permissible only if they “rest on separate and distinct acts.” Ante at 699, quoting Commonwealth v. King, 445 Mass. 217, 226 (2005), cert, denied, 546 U.S. 1216 (2006). The judge at a trial *705 on cognate offenses must impart this rule to the jury, either by “instructing] the jury explicitly that they must find separate and distinct acts underlying the different charges” or by “ma[king] clear that [the] indictments [a]re based on separate acts, each of which [is] described with particularity.” Ante at 699, 700, quoting Commonwealth v. Berrios, 71 Mass. App. Ct. 750, 753-754 (2008), and citing Commonwealth v. Gouse, 461 Mass. 787, 799 (2012). Failure to provide such instructions requires reversal of the lesser conviction if there is “any significant possibility” that the jury may have based cognate convictions on the same act. See ante at 700.

The court notes that “the jury were not given the option of convicting [Christopher] Bratlie of assault and battery as a lesser included offense of assault and battery for the purpose of intimidation.” Ante at 703. I do not understand this fact to form the basis for the court’s conclusion that Bratlie’s convictions of assault and battery and of assault and battery for the purpose of intimidation were based on separate acts. If we assume that the jury viewed assault and battery and assault and battery for the purpose of intimidation as noncognate offenses, each requiring proof of an element not required by the other, then the jury could well have concluded that a single act would support Bratlie’s convictions of both offenses. See Commonwealth v. Vick, 454 Mass. 418, 431 (2009). Otherwise put, the fact that the jury were incorrectly led to think that assault and battery and assault and battery for the purpose of intimidation are noncognate offenses did not reduce the risk that they based the convictions of these two offenses on a single act. See Commonwealth v. Thomas, 400 Mass. 676, 680-682 (1987) (reversing lesser conviction where judge failed to provide “separate acts” instruction and did not present offenses to jury as cognate offenses).

As the court’s analysis suggests, this was the evidence that most strongly supported Bratlie’s conviction of assault and battery for the purpose of intimidation. Accordingly, if — as the court assumes — the jury believed that Bratlie caused the victim bodily injury, it is puzzling that they did not convict him of assault and battery for the purpose of intimidation with the charged element of resultant bodily injury.